LaROSE, Judge.
 

 Susan Mathis appeals a final summary judgment entered in favor of Sheriff Jim Coats.
 
 [1]
 
 She sued the Sheriff for false arrest. Ms. Mathis raises three issues for our review. First, she challenges the trial court’s determination that she was under arrest when she was taken to Central Breath Testing (CBT). Second, she challenges the trial court’s conclusion that a deputy had probable cause to arrest her for driving under the influence (DUI). Third, she challenges the denial of her motion to file an amended complaint. We reverse and remand to allow Ms. Mathis to file an amended complaint. We affirm in all other respects.
 

 Factual Background
 

 On a summer afternoon in 2004, Ms. Mathis was driving north on U.S. Hwy. 19 in Pinellas County. Deputy McKenzie saw her strike the center median, nearly sideswipe another vehicle, and then strike the center median again. A backup deputy stopped Ms. Mathis. She does not contest the validity of the stop.
 

 Deputy McKenzie told Ms. Mathis that she failed to maintain a single lane and nearly caused a collision. According to Deputy McKenzie, Ms. Mathis seemed agitated and moved in a very jerky fashion. He also testified that she had bloodshot eyes.
 
 [2]
 
 In his written report, Deputy McKenzie noted that Ms. Mathis had slow coordination, exhibited difficulty following conversation, and had a flushed face. Yet, she was cooperative, did not smell of alcohol, and had clear speech. At the scene, Ms. Mathis reported that she had no sleep the previous night, took medication, and wore contact lenses. Although she denied being sick or injured at the scene, Ms. Mathis later reported that she had a broken right radius and complained of being nauseous at CBT.
 

 Based on his observations, Deputy McKenzie administered a series of field sobriety tests that Ms. Mathis could not satisfactorily complete. He concluded that she was driving under the influence, in violation of section 316.193, Florida Statutes (2003).
 

 Deputy McKenzie handcuffed Ms. Mathis, placed her in his cruiser, and drove her to CBT. There, she was subjected to an
 
 *1287
 
 other set of field sobriety tests. Ms. Mathis also submitted to a breath test; there was no indication of alcohol. Due to the inconsistency between the breath test and the field sobriety test results, Deputy McKenzie requested a urine sample from Ms. Mathis, and another deputy conducted a drug recognition evaluation.
 
 [3]
 
 At that point, about 6:30 p.m., Ms. Mathis was given a DUI citation and taken to the jail’s booking area. She was released from jail at about noon the next day.
 

 The On-Scene Arrest
 

 Ms. Mathis argues that she was not under arrest until sometime after she arrived at CBT. As we understand her argument, there was no probable cause to arrest her based on the observations made at CBT. Thus, she argues that the trial court erred in concluding that she was under arrest when she was placed in the cruiser at the scene of the stop. Ms. Mathis also contends that she was not under arrest at the scene because she was not told specifically that, indeed, she was under arrest. She claims that she was being detained only for investigation.
 

 A determination of when Ms. Mathis was under arrest is important to assess whether her false arrest claim is barred by the existence of probable cause. As the trial court recognized, it must “analyze whether there was probable cause at the time [Ms. Mathis] was arrested.”
 

 A lawful arrest occurs when there is:
 

 1) a purpose or intention to effect an arrest; 2) an actual or constructive seizure or detention by a person having present power to control the person arrested; and 3) communication by the arresting officer to, and an understanding by, the person whose arrest is sought of the officer’s purpose and intention to effect an arrest.
 

 Dep’t of Highway Safety & Motor Vehicles v. Whitley,
 
 846 So.2d 1163, 1167 n. 2 (Fla. 5th DCA 2003) (citing
 
 Kearse v. State,
 
 662 So.2d 677, 682-83 (Fla.1995)).
 
 Griggs v. State,
 
 994 So.2d 1198, 1199 (Fla. 5th DCA 2008), is instructive. There, the accused was handcuffed and told he was being detained following a traffic stop. Police searched his vehicle while he sat by the side of the road.
 
 Id.
 
 He was placed in a cruiser and taken to a police building.
 
 Id.
 
 The officers never used the word “arrest.”
 
 Id.
 
 After an interview, the accused was released.
 
 Id.
 
 The Fifth District held that the officers “undoubtedly communicated their intention to effect an arrest by their actions,” regardless of whether the word “arrest” was used.
 
 Id.
 
 at 1201. “ ‘Where ... the detained individual is physically removed from the scene and involuntarily transported to the police station for questioning and/or investigation, the courts have had little difficulty in construing such a detention to be a de facto arrest.’ ”
 
 Id.
 
 (quoting
 
 Saturnino-Boudet v. State,
 
 682 So.2d 188, 193 (Fla. 3d DCA 1996)).
 
 See also Whitley,
 
 846 So.2d at 1167 n. 2 (noting that an officer need not notify the detained individual that she is under arrest; officer’s conduct alone may be sufficient to inform the person).
 

 Also noteworthy is
 
 State v. Rivas-Marmol,
 
 679 So.2d 808, 809 (Fla. 3d DCA 1996), where the Third District determined that an arrest of an individual accused of DUI occurred after he failed a field sobriety test and was handcuffed, placed in the back of a police cruiser, and advised he was going to the police station.
 

 In the case before us, Ms. Mathis was detained and, after failing to complete the field sobriety tests, handcuffed and invol
 
 *1288
 
 untarily transported to CBT. Ms. Mathis was notified that her car would be impounded if alternate arrangements were not made to secure it. Although Deputy McKenzie told Ms. Mathis why she was stopped and testified that he transferred her to CBT to continue the DUI investigation, these statements are insufficient to establish mere detention.
 
 See Rivas-Marmol,
 
 679 So.2d at 809 (holding that an arrest occurred despite an officer’s testimony that the accused was only detained prior to a breath test). The trial court correctly concluded that Ms. Mathis was under arrest at the scene of the traffic stop.
 

 Probable Cause
 

 We must now determine whether the trial court properly concluded that probable cause existed at the time of arrest. We review the trial court’s decision de novo.
 
 See City of Clearwater v. Williamson,
 
 938 So.2d 985, 988 (Fla. 2d DCA
 
 2006)
 
 (applying a de novo standard of review in a case involving an underlying probable cause question). Sufficient probable cause to justify an arrest exists where the facts and circumstances allow a reasonable officer to conclude that an offense has been committed.
 
 State v. Riehl,
 
 504 So.2d 798, 800 (Fla. 2d DCA 1987);
 
 Mailly v. Jenne,
 
 867 So.2d 1250, 1251 (Fla. 4th DCA 2004). The existence of probable cause requires an examination of the totality of the circumstances.
 
 Williamson,
 
 938 So.2d at 989. The facts are to be analyzed from the officer’s knowledge, practical experience, special training, and other trustworthy information.
 
 City of Jacksonville v. Alexander,
 
 487 So.2d 1144, 1146 (Fla. 1st DCA 1986).
 

 Many factors contribute to a finding of probable cause for a DUI arrest. David A. Demers, “Probable Cause for DUI Arrest,” in
 
 DUI Handbook
 
 § 4.6(c) (11 West’s Fla. Practice Series 2008-2009 ed.). For example, although an odor of alcohol is significant, it may not be dispositive.
 
 State v. Kliphouse,
 
 771 So.2d 16, 23 (Fla. 4th DCA 2000). Other factors “may include the defendant’s reckless or dangerous operation of a vehicle, slurred speech, lack of balance or dexterity, flushed face, bloodshot eyes, admissions, and poor performance on field sobriety exercises.”
 
 Id.
 
 (footnotes omitted);
 
 see also Ingram v. State,
 
 928 So.2d 423 (Fla. 1st DCA 2006) (determining that law enforcement had probable cause to arrest defendant for DUI where defendant drove erratically, drove completely off the road, and had watery and bloodshot eyes and impeded speech);
 
 Whitley,
 
 846 So.2d at 1166 (holding that there was probable cause to arrest defendant for DUI where, among other factors, the officer observed defendant driving erratically and defendant’s eyes were glassy);
 
 McNall v. Dep’t of Highway Safety & Motor Vehicles,
 
 13 Fla. L. Weekly Supp. 1163 (Fla. 20th Cir.Ct.2006) (determining there was probable cause for a DUI arrest where a vehicle made a sudden jerk movement to the right and then back to the left while going eastbound, during that movement both left tires crossed the white line into the center eastbound lane, vehicle slowed down and sped up suddenly and made several drifting movements within the right lane, defendant’s eyes were red and watery, and defendant had problems with the field sobriety tests).
 

 Ms. Mathis argues that Deputy McKenzie unreasonably declined to accept her excuses for her erratic driving, unusual behavior, and difficulties performing the field sobriety tests. The deputy need not eliminate all possible defenses in order to establish probable cause.
 
 See Williamson,
 
 938 So.2d at 990 (stating that an officer is not required to take every conceivable step to investigate a defendant’s excuses prior to making a probable cause determina
 
 *1289
 
 tion). Deputy McKenzie’s determination that probable cause for arrest existed was reasonable under the circumstances and based on information then available to him. The arrest was lawful. Probable cause barred an action for false arrest on the record as then developed.
 
 See Bolanos v. Metro. Dade County,
 
 677 So.2d 1005, 1005 (Fla. 3d DCA 1996).
 

 Amended Complaint
 

 After the trial court orally announced the grant of the Sheriffs motion for summary judgment, Ms. Mathis filed a motion for reconsideration and sought leave to file an amended complaint. The trial court denied her requests. Reasonably read, the amendment purportedly asserted a cause of action based on Ms. Mathis’s unlawful seizure and subsequent detention in jail for an unreasonable length of time.
 
 [4]
 
 Absent an abuse of discretion, a trial court’s decision to permit or refuse an amendment will stand.
 
 Ohio Cas. Ins. Co. v. MRK Constr., Inc.,
 
 602 So.2d 976, 978 (Fla. 2d DCA 1992). “It is an abuse of discretion to disallow amendment of a pleading unless it clearly appears the amendment would prejudice the opposing party, the privilege to amend has been abused, or amendment would be futile.”
 
 Colandrea v. King,
 
 661 So.2d 1250, 1251 (Fla. 2d DCA 1995).
 

 To the extent Ms. Mathis purported to revitalize a false arrest claim, she must fail. The proposed amendment as to either the Sheriff or Deputy McKenzie on a false arrest theory would be futile; probable cause existed to arrest Ms. Mathis at the scene of the traffic stop.
 

 We cannot say the same to the extent that the proposed amendment challenged her continued detention at CBT. Though not exacting in its details, the proposed amendment appears to assert a cause of action for false imprisonment. False arrest and false imprisonment are closely related, but false imprisonment is a broader common law tort; false arrest is only one of several methods of committing false imprisonment.
 
 See
 
 § 787.02(l)(a), Fla. Stat. (2004) (“The term ‘false imprisonment’ means forcibly, by threat, or secretly confining, abducting, imprisoning, or restraining another person without lawful authority and against her or his will.”);
 
 Everett v. Fla. Inst. of Tech.,
 
 503 So.2d 1382, 1383 (Fla. 5th DCA 1987) (holding that a claim that a hospital involuntarily held the plaintiff without complying with Baker Act provisions adequately alleged the tort of false imprisonment);
 
 Candy H. v. Redemption Ranch, Inc.,
 
 563 F.Supp. 505, 516 (M.D.Ala.1983) (recognizing a cause of action for false imprisonment against a home for unwed girls);
 
 Big Town Nursing Home, Inc. v. Newman,
 
 461 S.W.2d 195, 197 (Tex.Civ.App.1970) (affirming judgment for false imprisonment by a nursing home). Indeed, a person improperly detained pursuant to a lawful arrest may have the right to bring an action for false imprisonment.
 
 Andrews v. Fla. Parole Comm’n,
 
 768 So.2d 1257, 1266 (Fla. 1st DCA 2000).
 

 The essential elements of a cause of action for false imprisonment include: (1) the unlawful detention and deprivation of liberty of a person; (2) against that person’s will; (3) without legal authority or “color of authority”; and (4) which is unreasonable and unwarranted under the circumstances.
 
 Montejo v. Martin Mem’l Med. Ctr., Inc.,
 
 935 So.2d 1266, 1268 (Fla.
 
 *1290
 
 4th DCA 2006) (citing
 
 Johnson v. Weiner,
 
 155 Fla. 169, 19 So.2d 699, 700 (1944);
 
 Jackson v. Navarro,
 
 665 So.2d 340, 341 (Fla. 4th DCA 1995)).
 

 Although probable cause existed at the time Ms. Mathis was arrested at the scene, she may be able to demonstrate that probable cause evaporated at some point after she was transported to CBT and jailed. After transport to CBT, Ms. Mathis’s breathalyzer test showed a .000 reading. A subsequent urinalysis indicated no level of drug or other intoxicants. We cannot say that Ms. Mathis’s proposed amended complaint was futile.
 
 See Sponar v. S.C. Dep’t of Pub. Safety,
 
 361 S.C. 35, 603 S.E.2d 412, 416 n. 3 (2004) (noting that an individual whom authorities continued to detain for DUI after registering below .05% on a breath test may have recourse in a civil action for false imprisonment);
 
 McConney v. City of Houston,
 
 863 F.2d 1180, 1185 (5th Cir.1989) (concluding that “a person may constitutionally be detained for at least four or five hours following a lawful warrantless arrest for public intoxication without the responsible officers having any affirmative duty during that time to inquire further as to whether the person is intoxicated”; an arrestee should be released once it is ascertained that he is not intoxicated);
 
 Babers v. City of Tallassee, Ala.,
 
 152 F.Supp.2d 1298, 1309 (M.D.Ala.2001) (“[Fjollowing a lawful warrantless arrest, a police officer has an affirmative duty to release an arrestee if he ascertains beyond a reasonable doubt that the probable cause which formed the basis for the arrest was unfounded.”).
 

 Conclusion
 

 We conclude that Ms. Mathis was under arrest when she was placed in the cruiser for transport to CBT. Probable cause existed to arrest Ms. Mathis for DUI at that point. However, Ms. Mathis should have been given leave to amend her complaint to pursue claims as to whether she was unlawfully detained after, and if, probable cause ceased to exist to justify her continued detention.
 

 Affirmed in part, reversed in part, and remanded.
 

 ALTENBERND and VILLANTI, JJ„ Concur.
 

 [1]
 

 . A motion for summary judgment may be granted if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fla. R. Civ. P. 1.510(c). We review the trial court's ruling de novo.
 
 See Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000).
 

 [2]
 

 . A drug evaluation form indicates that Ms. Mathis’s eyes were glassy, not bloodshot.
 

 [3]
 

 . The urinalysis proved negative, although the results were obtained some days later.
 

 [4]
 

 . We note that section 943.0585, Florida Statutes (2009), provides that a court can order a criminal justice agency to expunge the "criminal history record” of an individual.
 
 See generally
 
 15 Fla. Jur. 2d
 
 Criminal Law
 
 § 2105 (2009) (providing an overview of the expunction procedure). Our record is silent as to whether Ms. Mathis has pursued this option.